UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

STEVEN BENNETT et al.,

                                    Defendants.

**REPORT AND
RECOMMENDATION

AND

DECISION AND ORDER**

13-CR-17S

## I. INTRODUCTION

The Hon. William M. Skretny referred this case to this Court under 28 U.S.C. § 636(b).  (Dkt. No. 13.)  Pending before the Court are various pretrial motions filed by each of the remaining defendants,[1] including certain motions to suppress evidence.  The Court has held oral argument and hearings for the motions; transcripts for the hearing proceedings are available at Docket Nos. 259 and 260.

The Court now issues its rulings for the non-dispositive motions submitted and its recommendations for the dispositive motions.  The following table of contents should help the reader navigate the motions that each defendant filed:

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 3

III.   DISCUSSION .................................................................................................. 4

  A.  Steven Bennett ............................................................................................. 4

    i.   Omnibus Pretrial Motions—Non-dispositive ....................................... 4

    ii.  Suppression of Wiretap and Search Warrant—Dispositive ................ 9

---

[1] As of this writing, defendants Guy Burt, Nikki Lillard, and Courtney King have entered guilty pleas.  Burt and Lillard have been sentenced.

   iii.   Suppression of Statements—Dispositive ........................................................ 16

  B.  Chandra Woods ................................................................................................ 19

  C.  Jessica Lopez.................................................................................................... 19

   i.   Omnibus Pretrial Motions—Non-dispositive ................................................... 19

   ii.   Suppression of Statements—Dispositive ....................................................... 20

  D.  Phillip Keomongkoun........................................................................................ 22

   i.   Omnibus Pretrial Motions—Non-dispositive ................................................... 22

   ii.   *Bruton* Motion—Dispositive ........................................................................... 22

   iii.   Other Dispositive Motions ............................................................................. 22

  E.  Sandra Reyes and Malcolm Bull ...................................................................... 23

IV.  CONCLUSION ......................................................................................................... 23

V.  OBJECTIONS.......................................................................................................... 23

## II.  BACKGROUND

This case concerns allegations that defendant Steven Bennett ("Bennett") and others ran an extensive drug and money laundering operation across Western New York and parts of California.  The docket contains extensive information about how Bennett's operation allegedly shipped large quantities of narcotics between New York and California and used numerous bank accounts both to funnel drug proceeds to California and to structure the proceeds to avoid financial reporting requirements.  The Court will discuss further background as needed when addressing the various motions below.

After some initial charging instruments, the operative charging instrument now is the second superseding indictment filed on March 27, 2013.  (Dkt. No. 76.)  The second superseding indictment contains two counts and two forfeiture notices.  In Count One, the Government accuses Bennett and others of conspiring and agreeing "together and with others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and to distribute, 50 grams or more of methamphetamine, a Schedule II controlled substance, and 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B).  All in violation of Title 21, United States Code, Section 846." (*Id.* at 2.)  In Count Two, the Government accuses Bennett and others of money laundering conspiracy in violation of 18

U.S.C. § 1956(h).  The forfeiture notices generally concern any drug proceeds generated through the conspiracy.

## III. DISCUSSION

### A. Steven Bennett

#### i.   Omnibus Pretrial Motions—Non-dispositive

Bennett has filed a variety of non-dispositive pretrial discovery motions. (*See generally* Dkt. No. 118.)  "Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters.  For example, under the Fifth Amendment's Due Process Clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment.  In addition, the Government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500."  *U.S. v. Hong*, 545 F. Supp. 2d 281, 284 (W.D.N.Y. 2008) (Scott, *M.J.*).  With these general principles in mind, the Court will assess each of Bennett's discovery motions.

Pursuant to Rule 12(b), Bennett has requested that the Government give notice of its intention to use at trial certain categories of evidence that would be discoverable under Rule 16, to give him an opportunity to move to suppress under Rule 12 (b)(3)(C).  To the extent that the Government has not already

done so, the Government is directed to provide either notice to the defendant as requested or notice of any objections to the requests.

Bennett also has requested production of statements, tangible items, reports, and other information under Rule 16.  To the extent that it has not already done so, the Government is directed either to produce or to make available for inspection the items that Bennett has specified, in accordance with Rule 16.

Bennett has moved for a Bill of Particulars.  Rule 7(f) of the Federal Rules of Criminal Procedure allows the Court to direct the filing of a Bill of Particulars. Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial.  *U.S. v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted). "The important question is whether the information sought is necessary, not whether it is helpful.  It is improper to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory."  *U.S. v. LaMorte*, 744 F. Supp. 573, 577 (S.D.N.Y. 1990) (citations omitted).  Upon review of the Indictment and the Government's response to the omnibus motions, the Court finds that Bennett is not entitled to a Bill of Particulars inasmuch as he is sufficiently advised of the charges against him to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect him from double jeopardy.

Bennett also seeks information under FRE 404, 608, and 609.  FRE 404(b) governs requests for disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief.  FRE 404 requires that defendants be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial."  To the extent that the Government intends to use any such evidence of a prior bad act in its case in chief, the Government shall produce all FRE 404(b) evidence as directed by the District Court in the trial order.

With respect to Bennett's requests under FRE 608 and 609, the only notice requirement imposed by either Rule applies where a party intends to introduce evidence of a conviction that is more than ten years old.  Under such circumstances, FRE 609(b) mandates that "the proponent [give] to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."  To the extent the Government intends to use a conviction more than 10 years old, it must comply with this requirement.  The Government has no obligation to provide Bennett with notice of any material that will be used to impeach him pursuant to FRE 608 should he elect to testify.  *See U.S.  v. Livoti*, 8 F. Supp. 2d 246 (S.D.N.Y. 1998); *U.S. v. Song*, No. 95 Cr. 129 (KMW), 1995 WL 736872, at *7 (S.D.N.Y. Dec. 13, 1995).

6

Bennett seeks the disclosure of all potentially exculpatory materials, including information to be used for the impeachment of the Government's witnesses, as required under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *Brady* material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching ... [and] [a]ny and all records and information revealing prior misconduct ... attributed to the [Government's] witness." *U.S. v. Kiszewski*, 877 F.2d 210 (2d Cir. 1989). Bennett also seeks disclosure of the statements of witnesses under the Jencks Act (18 U.S.C. § 3500).

The Government has acknowledged its obligations under *Brady* and *Giglio v. U.S.*, 405 U.S. 150 (1972), as well as the Jencks Act. The Government represents that it will provide this material as directed in the District Court's trial order.

This Court believes that fundamental fairness and the constitutional due process requirements which underlie *Brady* mandate that the Court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined *Brady*/Jencks material. Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, ...

7

sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial ... so that those abhorrent lengthy pauses at trial to examine documents can be avoided." *U.S. v. Percevault*, 490 F.2d 126 (2d Cir. 1974); *U.S. v. Green*, 144 F.R.D. 631 (W.D.N.Y. 1992).

Here, the Court concludes that disclosure of such inculpatory and impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendants to have a fair opportunity to utilize the information at trial) is sufficient. The Court's conclusion includes Bennett's separate request for a search of Government personnel files for any *Brady* or *Giglio* material.

Bennett seeks a pretrial conspiracy hearing to test the foundation of co-conspirator statements pursuant to *Bourjaily v. U.S.*, 483 U.S. 171 (1987), *superseded by* Fed. R. Evid. 801(d)(2) (1997 Amendment).  The Court considers this evidentiary issue best left to the trial judge.  *See U.S. v. Glover*, 583 F. Supp. 2d 5, 10 n.8 (D.D.C. 2008).  "Of course, should the Government fail to prove a conspiracy at trial, the conspiracy count would be removed from the jury's consideration pursuant to Fed. R. Crim. P. 29."  *U.S. v. Wilk*, No. 04-cr-60216-JIC, Dkt. No. 339, at 2 (S.D. Fla. Mar. 14, 2005), *affirmed*, 2005 WL 7863458 (Apr. 29, 2005).  The Court denies this request but without prejudice to renew as necessary at trial.

8

Bennett seeks an order directing the Government to preserve rough notes and other evidence taken by any law enforcement agents involved in the case. In the event that issues arise at trial that require review of the items that Bennett has mentioned, the Government is directed to preserve rough notes and evidence taken, subject to further instructions from the trial judge.

        ii.    *Suppression of Wiretap and Search Warrant—Dispositive*

In his omnibus pretrial motions, Bennett included a motion to suppress evidence obtained from a wiretap order that Judge Skretny issued (Case No. 12-MR-62), and from a search warrant of 108 Decker Street that this Court issued on January 17, 2013 (Case No. 13-MJ-2020).  Bennett has sought a hearing for both of these warrants pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). With respect to the wiretap order, Bennett argues that the order issued without probable cause and lacked a proper statement of necessity.  Agents had developed confidential sources to provide information and used techniques such as video surveillance, mail cover requests, cell site information, and GPS tracking.  Yet, according to Bennett, agents failed to tell Judge Skretny in the wiretap application how far the investigation had proceeded with these conventional techniques.  Regarding the search warrant, Bennett would like the *Franks* hearing to extend to accurate information that he believes that agents withheld from this Court or information provided that was intentionally false.

A court may authorize a wiretap "if the judge determines on the basis of the facts submitted by the applicant that (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter; (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception; (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; [and] (d) except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person."  18 U.S.C. § 2518(3). Among other requirements, a wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  *Id.* § 2518(1)(c).  "[A] reviewing court will defer to the issuing court's determination that there was probable cause as long as there existed a substantial basis for a magistrate or judge to conclude that a search would uncover evidence of wrong-doing."  *U.S. v. Biaggi*, 853 F.2d 89, 95 (2d Cir. 1988) (internal quotation marks and citations omitted).  With respect to necessity, "the purpose of the statutory requirements is not to preclude resort to electronic

10

surveillance until after all other possible means of investigation have been

exhausted by investigative agents; rather, they only require that the agents

inform the authorizing judicial officer of the nature and progress of the

investigation and of the difficulties inherent in the use of normal law enforcement

methods."  *U.S. v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (internal

quotation marks and citations omitted).  The wiretap statute also contains a

requirement for "minimization."  "Every order and extension thereof shall contain

a provision that the authorization to intercept shall be executed as soon as

practicable, shall be conducted in such a way as to minimize the interception of

communications not otherwise subject to interception under this chapter, and

must terminate upon attainment of the authorized objective, or in any event in

thirty days.  In the event the intercepted communication is in a code or foreign

language, and an expert in that foreign language or code is not reasonably

available during the interception period, minimization may be accomplished as

soon as practicable after such interception."  18 U.S.C.§ 2518(5); *see also U.S.*

*v. Terry*, 702 F.2d 299, 312 (2d Cir. 1983) (describing minimization as a

requirement "that agents observe reasonable safeguards against excessive

intrusion") (citations omitted).

The Court has reviewed *in camera* the wiretap application to Judge

Skretny and the 10-day reports that the agents submitted to him under 18 U.S.C.

§ 2518(6).  In the application, the Government disclosed to Judge Skretny that

11

Erie County Court Judge Michael D'Amico authorized two wiretap orders against Bennett approximately 10 years ago, which led to Bennett's prior conviction under 21 U.S.C. § 843(b).  (*See generally* Case No. 05-CR-173.)  The Government described how confidential sources provided information about drug transactions and money laundering involving Bennett that occurred between Western New York and California.  The details about the confidential sources included details about consensually monitored and recorded telephone calls to Bennett and included excerpts of transcripts from those calls.  The Government detailed the results of the mail cover requests, including lists of sender and receiver addresses from both California and Western New York.  The Government also informed Judge Skretny that pen registers and trap and trace devices authorized against Bennett logged over 26,000 combined inbound and outbound calls and text messages for just 3-1/2 months—September 18, 2012 through December 10, 2012.  The Government then argued to Judge Skretny why, despite all of the information obtained, it needed the wiretap order.  The Government explained that "there is no definitive information regarding where BENNETT's narcotics proceeds end up after they are put in the bank accounts. Furthermore, law enforcement does not know whether the individuals whose bank accounts are being utilized to funnel money from Buffalo to Los Angeles are aware of BENNETT's narcotics trafficking.   Also, investigators are still trying to determine the identity of BENNETT's source of supply."  (App. at 42.)  The

Government gave Judge Skretny goals for the wiretap order that included finding the identities and roles of all suppliers; discovering the full scope and identities of key personnel; discovering main customers and stash locations; and discovering the management and disposition of drug proceeds.  The Government explained that confidential sources could go only so far to give agents a full picture of the extent of Bennett's activities.  The Government explained that physical surveillance had its limits, given Bennett's use of post offices, different banks in Buffalo and Los Angeles, rental vehicles, and counter-surveillance techniques to thwart the efforts of the agents.  Introducing an undercover agent into Bennett's operation would have been difficult, according to the Government, both because Bennett dealt with a small number of close associates and because any undercover agent who wanted to become a close associate would have to traffic in even larger quantities than the confidential sources did, putting the agent at risk.  Finally, the Government explained that a pole camera would not reveal a lot of additional information; confidential sources had provided some information to a grand jury, and that search warrants were a possibility later but not at the time of the wiretap application.  The Government explained that a search warrant would have to be executed carefully to hit a targeted location when contraband could be expected there, and that the mobile nature of Bennett's operation made such timing difficult.  The Government explained further that a search warrant would be a dramatic and highly visible technique that usually is reserved for the end of

13

an investigation, since it immediately alerts anyone involved to the existence of an investigation.  In the 10-day reports that the Government subsequently filed, Judge Skretny received a breakdown of total intercepts, pertinent calls, minimized calls, and calls that lasted under two minutes.  Judge Skretny also received transcriptions of intercepted calls that the Government found particularly important in justifying the continuation of the wiretap order.

Based on all of the above information, Bennett has not made enough of a showing to challenge the wiretap applications, including through a *Franks* hearing, and to suppress the resulting wiretap evidence.  The above information shows that Judge Skretny was fully aware of all the investigative techniques used and contemplated, and what those techniques had revealed or could reveal up to that point.  The use and contemplation of all of those techniques demonstrate that the Government in no way rushed to wiretapping as an investigative technique of first resort.  The Government also explained, to Judge Skretny's satisfaction, exactly what information it still sought through the wiretap order and where that information would fit in the overall investigation.  Under these circumstances, the Court finds nothing deceptive or incomplete about the wiretap application and finds that the Government satisfied all the prerequisites to the issuance of a wiretap order.  Bennett of course remains free at trial to challenge the credibility of any agents or confidential sources associated with the wiretap

order, but the wiretap order itself was proper.  The Court thus recommends

denying Bennett's motion to suppress wiretap evidence.

The search warrant for 108 Decker Street follows a similar analysis.

Agents informed the Court about confidential sources who provided extensive

information about Bennett's alleged drug activities.  The information included

consensually monitored and recorded telephone calls, wiretap information, and

mail packages obtained with the help of confidential sources.  The Government

explained that confidential sources, physical surveillance, and GPS information

from Bennett's car all pointed to 108 Decker Street as Bennett's primary

residence and a location that carried at least a fair probability of harboring

contraband and information leading to contraband.  *See Messerschmidt v.*

*Millender*, 132 S. Ct. 1235, 1248 n.7 (2012) ("The Fourth Amendment does not

require probable cause to believe evidence will conclusively establish a fact

before permitting a search, but only probable cause to believe the evidence

sought will aid in a particular apprehension or conviction.") (internal quotation and

editorial marks and citation omitted); *U.S. v. Bakhtiari*, 913 F.2d 1053, 1062 (2d

Cir. 1990) ("Probable cause requires only a probability or substantial chance of

criminal activity, not an actual showing of such activity.") (internal quotation and

editorial marks and citation omitted).  Again, Bennett will have every opportunity

at trial to challenge the credibility of anyone associated with the preparation and

execution of the search warrant, but the Court is satisfied that probable cause

existed to issue the warrant.  The Court thus recommends denying Bennett's motion for a *Franks* hearing about the warrant and to suppress evidence obtained after its execution.

### iii.    Suppression of Statements—Dispositive

The Court next will turn its attention to the motion to suppress statements. Agents arrested Bennett on January 18, 2013, one day after the Government filed the original indictment and the Clerk of the Court issued a corresponding arrest warrant.  Special Agent Jonathan Sullivan ("Sullivan") of the Drug Enforcement Administration ("DEA") testified that he and other agents entered Bennett's house on the 18th to execute a parallel search warrant.  Agents took Bennett into custody without incident and transported him back to the DEA office in Buffalo.  Agents placed Bennett in a standard interview room and removed his handcuffs.  Sullivan read Bennett his *Miranda* warnings from a DEA Form 13A card.  Sullivan told Bennett why he was there; Sullivan cannot rule out that he told Bennett that Bennett was facing a possible life sentence.  Sullivan also could not rule out mentioning the possible life sentence before reading the *Miranda* warnings but denied that he would have done so to encourage Bennett to waive the *Miranda* rights.  Sullivan did confirm that he told Bennett to "help us help you" by talking.  (Dkt. No. 260 at 26.)  Sullivan intended to convey to Bennett that answering the agents' questions would benefit Bennett.

Over the course of the interview, which lasted approximately two hours, Bennett explained how he purchased methamphetamine from co-defendant Sandra Reyes ("Reyes"), who lived in California. At Sullivan's direction, and with agents monitoring, Bennett called Reyes; the two discussed additional quantities of drugs that Reyes could send after Bennett paid the drug debt that he owed. Sullivan had testified that the call in question was an incoming call to Bennett and that he directed Bennett to take the call. When confronted with his DEA-6 report indicating that agents directed the call (Gov't Ex. 2), Sullivan conceded, "Looking at that I would have to say that we directed him to make the call." (*Id.* at 43.) Agents tried to record the telephone conversation, but the recording equipment failed and left a blank tape. The interview ended not too long thereafter. Sullivan subsequently conveyed Bennett's degree of cooperation and honesty but did not otherwise take any steps to ensure that Bennett would receive any benefit for talking.

"In assessing the voluntariness of a defendant's waiver of his right to remain silent . . . , the proper test is whether the waiver and the consent were the product of an essentially free and unconstrained choice by their maker. When engaging in this inquiry, a reviewing court must consider the totality of all the surrounding circumstances. Accordingly, this Court has steadfastly avoided the adoption of any criterion that, in and of itself, would mandate a finding of involuntariness and thereby undermine a thorough analysis of all the relevant

17

circumstances." *U.S. v. Bye*, 919 F.2d 6, 8–9 (2d Cir. 1990) (editorial and internal quotation marks and citations omitted).  "Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986) (citations omitted).

Here, Bennett's interrogation featured some indicia of an involuntary confession but not enough to cross the threshold.  The comment that Bennett was facing a potential life sentence was imprudent.  *See Bye*, 919 F.2d at 9 (labeling as "arguably imprudent" an agent's comments about a potential sentence "and the purported benefits of early cooperation").  In directing Bennett to call a co-defendant, the agents risked making Bennett an informant against himself.  The timing and the content of the call, however, mitigate against the directive to make the call.  By the time Bennett made the call to Reyes, he already had made statements about his drug purchases from her.  The call does not seem to have yielded any qualitatively new information.  As for other factors, the agents did give Bennett his *Miranda* warnings, and Bennett seems to have understood his rights.  Bennett does not appear to have requested an attorney at any time during the interview.  The interview lasted a relatively short period of time.  *Cf.  U.S. v. Duvall*, 537 F.2d 15, 24 (2d Cir. 1976) (finding that statements to a prosecutor should have been suppressed where defendant entered that

interview "[u]narraigned and uncounselled for 20 hours").  The Second Circuit

has found that empty promises of assistance do not, without more, warrant

suppression.  *See, e.g., U.S. v. Guarno*, 819 F.2d 28, 31 (2d Cir. 1987) ("We

have previously held that a confession is not involuntary merely because the

suspect was promised leniency if he cooperated with law enforcement officials.")

(citations omitted).  Considering the totality of the circumstances, Bennett's

interview did not occur in a way that overpowered his will to resist questioning

that he did not want to face.  The Government thus has established voluntariness

by a preponderance of the evidence.  The Court recommends denying Bennett's

motion to suppress his interview statements.

### B. Chandra Woods

Defendant Chandra Woods ("Woods") has filed omnibus pretrial motions

(Dkt. No. 108) that duplicate the non-dispositive, omnibus motions that Bennett

made and that the Court addressed above.  For the sake of brevity, the Court

holds that its rulings for Bennett's non-dispositive omnibus motions apply equally

to Woods.  The Court's deferral of Bennett's requests under FRE 404 will apply

to Woods's request under FRE 807.

### C. Jessica Lopez

#### i.   Omnibus Pretrial Motions—Non-dispositive

Defendant Jessica Lopez ("Lopez") seeks an order requiring disclosure of

information pertaining to informants who may have been involved in this case.

19

The Government is not required to furnish the identities of informants unless it is essential to the defense. *Raver v. U.S.*, 353 U.S. 52, 60–61 (1957); *U.S. v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988).   Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial. *U.S. v. Bejaia*, 904 F.2d 137, 139 (2d. Cir. 1990).   Lopez has not established that the pre-trial disclosure of the identities of any informants is essential to her defense.   The Court thus denies the request.

Lopez has made other non-dispositive requests that are substantially similar to the non-dispositive requests that Bennett made and that the Court addressed above.   The Court's rulings on Bennett's non-dispositive motions apply equally to Lopez.

### ii.   Suppression of Statements—Dispositive

Lopez seeks suppression of statements that she allegedly made following her arrest on January 18, 2013.  Agents arrested Lopez along with other co-defendants in this case and brought her to DEA headquarters in Buffalo.  Agents then interviewed Lopez in a standard interview room.  Lopez was in custody but was not handcuffed at the time of the interview.  Agents read Lopez her *Miranda* rights and confirmed that she understood them.  Agents then asked whether Lopez would be willing to answer questions; Lopez agreed to do so.  As agents proceeded to ask Lopez questions, they wrote out by hand the questions that they asked and the answers that Lopez provided.  The handwritten notes

became Government Exhibit 1 at Lopez's hearing.  In short, the questions focused on Lopez's relationship with co-defendant Bennett.  At the end of the interview, Lopez initialed each page and then signed the last page.  Finally, agents presented Lopez with a Consent to Search form that would give them permission to search the contents of a cellular telephone that they seized from her.  Lopez signed the form after reviewing it with the agents.  (Gov't Hg. Ex. 2.) A few days later, agents returned the telephone to Lopez after determining that it did not contain any information that interested them.

As with Bennett above, the Government must prove voluntariness by a preponderance of the evidence.  The Court's review must cover the totality of the circumstances.  After reviewing all of the circumstances, the Court finds no conduct by the agents that would have overcome Lopez's will to resist questioning.  Lopez was in custody but was not handcuffed.  The agents took the time to make sure that Lopez understood her rights and agreed to proceed.  The agents wrote out the questions and answers one at a time as the interview unfolded; nothing about the interview appears to have pressured Lopez into keeping quiet if the agents had written anything down incorrectly.  The consent to search the telephone also appears to have occurred uneventfully and, incidentally, did not lead to any new evidence anyway.  Altogether, the Government has established that Lopez's interview proceeded in a voluntary fashion.  The Court thus recommends denying Lopez's motion to suppress.

### D. Phillip Keomongkoun

#### i.   Omnibus Pretrial Motions—Non-dispositive

Defendant Phillip Keomongkoun ("Keomongkoun") has filed omnibus

pretrial motions (Dkt. No. 116) that are substantially similar to the non-dispositive,

omnibus motions that Bennett and Lopez made and that the Court addressed

above.  For the sake of brevity, the Court holds that its rulings for Bennett's and

Lopez's non-dispositive omnibus motions apply equally to Keomongkoun.

#### ii.   Bruton Motion—Dispositive

Keomongkoun has included a prospective motion to preclude from

evidence any post-arrest statements by non-testifying co-defendants that might

implicate him.  Romero cites *Bruton v. U.S.*, 391 U.S. 123 (1968), as the basis for

his request, though he acknowledged as of the time of the motion that he had not

received any statements that actually implicate this issue.  Since the Court does

not recall any *Bruton* issues being developed further in any subsequent

proceedings, and since the trial judge would be in a better position to address

those issues anyway, the Court recommends denying the request without

prejudice to renew at trial as needed.

#### iii.   Other Dispositive Motions

Keomongkoun also included in his initial motions a prospective motion to

suppress.  The motion did not develop into a hearing or other proceedings, but

the Court will recommend denying the motion without prejudice to renewing at

trial as may become necessary.

### E. Sandra Reyes and Malcolm Bull

Defendants Sandra Reyes and Malcolm Bull did not file pretrial motions, but for the sake of clarity and in the interest of justice, the Court's rulings on the other defendants' non-dispositive motions will apply equally to them.

## IV. CONCLUSION

For all of the pending pretrial motions, the Court has made its findings and recommendations as explained above for each defendant.

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days.  *See* 28 U.S.C. § 636(b)(1); FRCP 59.  "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).


SO ORDERED.

_____/s/ Hugh B. Scott_____
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: December 23, 2015